## GEORGE S. BUSH & CO., Inc., v. UNITED STATES.

### Customs Appeal No. 4173.

Court of Customs and Patent Appeals.
June 15, 1939.

LENROOT and JACKSON, Associate Judges, dissenting.

———◆———

Lawrence & Tuttle, of San Francisco, Cal. (George R. Tuttle, of San Francisco, Cal., of counsel), for appellant.

Webster J. Oliver, Asst. Atty. Gen. (Charles D. Lawrence, Sp. Asst. to Atty. Gen., and Joseph F. Donohue, Sp. Atty., of Nutley, N. J., of counsel), for the United States.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a judgment of the United States Customs Court, Second Division, in reappraisement No. 113,195–A.

Merchandise, consisting of canned clams, imported into the United States from Japan and entered at the port of Seattle, Washington, was appraised by the local appraiser at that port upon the basis of the American selling price as defined in section 402(g) of the Tariff Act of 1930, pursuant to a proclamation by the President of the United States, dated May 1, 1934, T. D. 47031, 65 Treas.Dec. 736, issued under the flexible tariff provisions—section 336—of the Tariff Act of 1930.

Section 336, supra, so far as material to the issues here involved, reads:

"Sec. 336 [§ 1336]. Equalization of costs of production.

"(a) Change of classification or duties.—In order to put into force and effect the policy of Congress by this Act [chapter] intended, the commission (1) upon request of the President, or (2) upon resolution of either or both Houses of Congress, or (3) upon its own motion, or (4) when in the judgment of the commission there is good and sufficient reason therefor, upon application of any interested party,

shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings. The commission is authorized to adopt such reasonable procedure and rules and regulations as it deems necessary to execute its functions under this section. The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

"(b) Change to American selling price. —If the commission finds upon any such investigation that such differences can not be equalized by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price (as defined in section 402 [1402] (g)) of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute, and no such rate shall be increased.

"(c) Proclamation by the President.— The President shall by proclamation approve the rates of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production.

*   *   *   *   *   *   *

"(e) Ascertainment of differences in costs of production.—In ascertaining under this section the differences in costs of pro-

duction, the commission shall take into consideration, in so far as it finds it practicable:

"(1) In the case of a domestic article.—(A) The cost of production as hereinafter in this section defined; (B) transportation costs and other costs incident to delivery to the principal market or markets of the United States for the article; and (C) other relevant factors that constitute an advantage or disadvantage in competition.

"(2) In the case of a foreign article.—(A) The cost of production as hereinafter in this section defined, or, if the commission finds that such cost is not readily ascertainable, the commission may accept as evidence thereof, or as supplemental thereto, the weighted average of the invoice prices or values for a representative period and/or the average wholesale selling price for a representative period (which price shall be that at which the article is freely offered for sale to all purchasers in the principal market or markets of the principal competing country or countries in the ordinary course of trade and in the usual wholesale quantities in such market or markets); (B) transportation costs and other costs incident to delivery to the principal market or markets of the United States for the articles; (C) other relevant factors that constitute an advantage or disadvantage in competition, including advantages granted to the foreign producers by a government, person, partnership, corporation, or association in a foreign country.

\* \* \* \* \* \* \*

"(h) Definitions.—For the purpose of this section—

\* \* \* \* \* \* \*

"(4) The term 'cost of production', when applied with respect to either a domestic article or a foreign article, includes, for a period which is representative of conditions in production of the article: (A) The price or cost of materials, labor costs, and other direct charges incurred in the production of the article and in the processes or methods employed in its production; (B) the usual general expenses, including charges for depreciation or depletion which are representative of the equipment and property employed in the production of the article and charges for rent or interest which are representative of the cost of obtaining capital or instruments of production; and (C) the cost of containers and coverings of whatever nature, and other costs, charges, and expenses incident to placing the article in condition packed ready for delivery."

Section 402 of the Tariff Act of 1930, 19 U.S.C.A. § 1402, so far as pertinent, reads:

"Sec. 402 [§ 1402]. Value.

\* \* \* \* \* \* \*

"(d) Export value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

"(g) American selling price.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article."

The importer appealed for reappraisement, claiming that the involved merchandise, which it is conceded is dutiable under paragraph 721(b) of the Tariff Act of 1930 at 35 per centum ad valorem should have been appraised at its foreign or export values, whichever are higher, rather than upon the basis of the American selling price, as defined in section 402 (g), supra.

On the trial before the trial court it was stipulated by counsel for the parties that the merchandise has no foreign values; that its export values are $2.75 per case for that imported in five ounce tins, and $3.68 per case for that imported in 8 ounce tins,

less nondutiable charges as shown by the invoice; that should the export values be held to be the proper dutiable values of the merchandise the dutiable values are $2.5107 per case for the 5 ounce tins, and $3.598 per case for the 8 ounce tins; and that should the presidential proclamation be held valid, the appraised values are the proper dutiable values of the merchandise.

Counsel for the importer introduced in evidence the presidential proclamation and the report of the Tariff Commission.

The trial court affirmed the appraised values, and, on appeal, the appellate division of the Customs Court affirmed the judgment of the trial court.

Counsel for appellant contend that the proclamation by the President is invalid because it was based upon an investigation by the Tariff Commission which was not made in accordance with the provisions of section 336, supra; that the Tariff Commission being unable to find the cost of production of the involved merchandise, as defined in section 336(h) (4), accepted as evidence of such cost the weighted average of invoice prices of merchandise like that here involved in Japanese yen for the period from December 1, 1930 to September 30, 1932, and converted the Japanese yen into United States currency at the average rate of exchange for the year 1932, contrary to the provisions of section 336 (e) (2), supra; that, in so doing, the commission failed to follow the plain mandates of the statute, and, as a result, found it necessary to raise the duties on the imported merchandise out of all proportion to the difference in the cost of production of such merchandise and a like domestic product; and that "if the procedure followed by the commission and the President is not in violation of the terms of section 336, then the statute is an unconstitutional delegation of legislative power in that it grants to the agent discretion as to what the law shall be." The validity of the presidential proclamation is also challenged by counsel for appellant for other reasons, which, due to the views we hold, need not be stated here.

In its report in the instant case, the Tariff Commission stated that the cost of production of the foreign article, as defined in section 336 (h) (4), supra, was not readily ascertainable, and that, in accordance with section 336 (e) (2) (A), it "accepted as evidence thereof the weighted average invoice prices of imports from that country." (Italics ours.)

It will be observed that section 336 (e) (2) (A) expressly authorizes the commission to accept as evidence of the cost of production of a foreign article "the weighted average of the invoice prices or values for a representative period," in the event the cost of production, as defined in paragraph (h) (4), supra, can not be readily ascertained.

In its report, the commission stated that: *"The years 1931 and 1932 are representative* with respect to the domestic cost of production of canned clams *and the invoice prices of Japanese canned clams, in terms of Japanese currency.* During most of 1931 the exchange rate of the Japanese yen for the dollar was not much below par, whereas since that time it has been much below par. For this reason the invoice prices of the Japanese product imported in 1931, when converted to dollars at the then current rate of exchange, are not representative of the present or probable future invoice values in terms of dollars. *The Commission has, therefore, used, for comparison with the domestic costs, the invoice prices in yen as evidence of costs of the Japanese product during 1931 and 1932, converted to dollars at the average rate of exchange for 1932.* Although the exchange rate of the yen has risen since April 1933, the rate now prevailing is not much higher than the average rate for 1932." (Italics ours.) And that: "(C) *No other relevant factors constituting an advantage or disadvantage in competition were disclosed during the course of the investigation."* (Italics ours.)

The question presented, therefore, is whether the Tariff Commission had any statutory authority to take the period from December 1, 1930 to September 30, 1932 (which it did in the instant case), as a representative period with respect to the invoice prices or values in Japanese currency, and, because the "exchange rate of the Japanese yen for the dollar" was much below par in 1932, use the average rate of exchange during the year 1932 for the purpose of ascertaining the weighted average of invoice prices in United States currency for the period from December 1, 1930 to September 30, 1932.

In providing in section 336 (e) (2) (A) that the Tariff Commission might accept as evidence of the cost of production of a foreign article the "weighted average of the invoice prices or values for a representative period," the Congress must have

had in mind the conversion of foreign currency into United States currency. It certainly knew that finding the weighted average of the invoice prices or values for a *representative period* in foreign currency would afford the Tariff Commission no information whatsoever as to the cost of production of a foreign article.

We are of opinion that the statutory provision should be construed as though it read—the commission may accept as evidence of the cost of production of a foreign article the weighted average of the invoice prices or values *in United States currency for a representative period.*

In the case of Feltex Corp. v. Dutchess Hat Works, 71 F.2d 322, 331, 21 C.C.P.A., Customs, 463, 478, T.D. 46957, this court considered the language "the weighted average of the invoice prices or values for a representative period," contained in section 336 (e) (2) (A), supra, and said, inter alia: "It is clear that Congress, in using the term 'representative period,' had in mind that conditions upon a given day or during a given month might not fairly reflect the prices at which the merchandise was imported into the United States, *but in order fairly to determine invoice prices as evidence of costs of production, they should be considered over a representative period, and their weighted average over such period might be accepted.*" (Italics supplied.) It was also stated in that decision that: "The statute expressly requires the Commission, in certain circumstances, to select a representative period for the ascertainment of certain facts. This the Commission declares it has done. Moreover, there is no evidence in the record that it was not in fact a representative period for the ascertainment of the weighted average of invoice prices as required by the statute."

What the commission did in the instant case was to find the weighted average of the invoice prices or values *in Japanese currency for an alleged representative period*—December 1, 1930 to September 30, 1932—and then convert the Japanese currency into United States currency at the average rate of exchange for another period—the year 1932. Obviously, the commission did not find the weighted average of the invoice prices or values *for a representative period.* On the contrary, it found a weighted average by using two separate periods, neither of which was representative. The formula used by the commission was not that prescribed by the Congress, but one which the commission evidently thought was better adapted to the exigencies of this particular case.

If the commission has authority to modify the formula prescribed by the Congress for finding the weighted average of the invoice prices or values, it has equal authority to change the statutory definition of the term "cost of production," provided in section 336 (h) (4), supra. Furthermore, if the commission had authority to do what it did in the instant case, that is, apply the average rate of exchange for the year 1932 for the conversion of Japanese currency into United States currency, during which period the exchange rate was "much below par," and thereby find that the cost of production of the foreign article was far less than the cost of production of the domestic article, it, of course, had equal authority to apply the average rate of exchange for the year 1931, during which period such rate was "not much below par," and, as a consequence, have found a much higher cost of production for the foreign product, or the commission might have followed the formula provided by the Congress and found the weighted average of the invoice prices or values of the foreign product in United States currency for a representative period by converting Japanese currency into United States currency at the proper rates of exchange for the period from December 1, 1930 to September 30, 1932, and found a cost of production of the foreign article greater than that found by the commission and less than that which the commission would have found had it applied the average rate of exchange for the year 1931.

By following its own formula, the commission found it impossible to equalize the difference in costs of production of the foreign and domestic articles by raising the 35 per centum ad valorem rate of duty provided in paragraph 721 (b), supra, 50 per centum, the maximum increase provided in section 336 (a), supra, and, accordingly, found it necessary to apply the 35 per centum ad valorem rate of duty "based upon the American selling price (as defined in section 402 (g) of the domestic article," in accordance with the provisions of section 336 (b), supra. Had the commission followed the second formula hereinbefore stated, the difference in cost of production of the foreign article and the domestic article would have been much less, and consequently the customs duties necessary to

equalize such differences would have been much less. Or had the commission followed the formula prescribed by the Congress, the difference in cost of production of the foreign and domestic articles would have been less than that found by the commission and greater than that which it might have found had it followed the second formula, and consequently the customs duties necessary to equalize such difference in cost of production would have been less than that found by the commission in the instant case, and greater than that which the commission would have found had it followed the second formula.

■ It is clear, therefore, that if the commission has authority to do what it did in the instant case, it has authority to find on the same facts at least three entirely different costs of production for the foreign article, and, instead of recommending to the President a rate of duty based upon findings of fact, could recommend a rate of duty in accordance with its own economic theories. Such authority necessarily involves a discretion as to whether tariff duties shall be high or low, or whether they shall be high in certain instances and low in others—a discretion, legislative in character, which the Congress has no power to delegate. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624, and cases therein cited. Obviously, the Congress did not intend to delegate any such power to either the Tariff Commission or the President.

■ The Congress has given the Tariff Commission wide latitude so that the difference in cost of production of a domestic and a like or similar foreign article might be properly ascertained. In so doing, however, the Congress has prescribed certain limitations and laid down certain definitions, which the Tariff Commission has no right to ignore. Hampton, Jr., & Co. v. United States, supra.

■ It is urged upon us, in the instant case, that, as the commission is not limited in ascertaining the cost of production of a foreign article to the weighted average of invoice prices or values but may, as it did in the instant case, take into consideration transportation costs and other costs incident to delivery of the foreign article to the principal market of the United States, as provided in section 336 (e) (2) (B), supra, and also "other relevant factors that constitute an advantage or disadvantage in competition," as provided in section 336 (e)

(2) (C), supra, it had the right to take into consideration, in finding the "weighted average of the invoice prices or values for a representative period," the comparative values of the foreign and United States currencies, and apply the rate of exchange for one period to the weighted average in a foreign currency of the invoice prices or values for another period.

The answer to that contention is that the statute does not so provide.

■ Whether the Congress intended that the language "other relevant factors that constitute an advantage or disadvantage in competition," contained in section 336 (e) (2) (C), supra, should include matters pertaining to the conversion of foreign currency into United States currency is a question. which need not concern us here. The Congress certainly did not intend that, in finding the "weighted average of the invoice prices or values" of a foreign article "for a representative period," the commission should take into consideration "other relevant factors that constitute an advantage or disadvantage in competition." It is obvious that the Congress intended that such relevant factors, if any, should be considered by the commission independently of, or supplementary to, the weighted average of invoice prices or values of a foreign article for a representative period.

■■ A legal investigation by the Tariff Commission is a condition precedent to the issuance of a lawful proclamation by the President. Hampton, Jr., & Co. v. United States, supra; William A. Foster & Co., Inc., et al. v. United States, 20 C.C.P.A., Customs, 15, T.D. 45673; Norwegian Nitrogen Products Co. v. United States, 20 C.C.P.A., Customs, 27, T.D. 45674; United States v. Fox River Butter Co., 20 C.C.P.A., Customs, 38, T.D. 45675. That the investigation of the costs of production in accordance with the provisions of section 336 (e) (1) and (2) and (h) (4) is necessarily involved in, and, therefore, a part of, the Tariff Commission's investigation of the difference in the cost of production of a domestic article and a like or similar foreign article, is so clear as to require no discussion, for, obviously, unless the Tariff Commission first investigates the cost of production of each of the competing articles, it cannot ascertain the difference in the costs of production of such articles. The report of the Tariff Commission to the President is competent evidence to establish whether the commission's investigation

and findings were made in conformity with the statutory requirements. Norwegian Nitrogen Products Co. v. United States, supra; United States v. S. Leon & Co., 20 C.C.P.A., Customs, 49 T.D. 45677; Carl Zeiss, Inc. v. United States, 76 F.2d 412, 23 C.C.P.A., Customs, 7, T.D. 47654.

It clearly appears from the commission's report that its investigation of the cost of production of the foreign article and its findings with respect thereto were based upon an erroneous conception of the statutory provision relative to the weighted average of the invoice prices and values of the foreign article for a representative period, and that, had the commission ascertained the weighted average of such invoice prices or values in accordance with the statutory provision, its findings both with respect to the cost of production of the foreign article and the rate of duty necessary to equalize the difference in cost of production of that article and the domestic article would have been substantially different.

In the case of Feltex Corp. v. Dutchess Hat Works, supra, we held that the President was not bound by the "results" or "findings" reported by the Tariff Commission in determining whether the rates specified in the report of the commission are shown by the Tariff Commission's investigation to be necessary to equalize the difference in cost of production of foreign and domestic products, and that if "the President, upon an examination of all the facts before the Commission, had any legal basis for a finding" that the rates specified in the report of the commission "were necessary to equalize costs of production, his proclamation is valid."

In the Feltex Corp. case, supra, it appeared that the Tariff Commission had made a legal investigation, and the principles announced in our decision in that case were intended to apply only in the event such an investigation has been made. In the instant case, however, a legal investigation by the Tariff Commission—a condition precedent to the issuance of a lawful proclamation by the President—has not been made. Accordingly, the principles announced in the Feltex case, supra, have no application to the issues in the case at bar.

■ We must hold, therefore, that as the investigation made by the Tariff Commission was illegal for the reasons hereinbefore stated, the proclamation by the President, based upon such investigation, was without authority of law, illegal, and void; that the appraisement and reappraisement of the involved merchandise, made on the basis of the American selling price in accordance with such proclamation, were, therefore, illegal and void; that the export values are the dutiable values of the merchandise; that, in accordance with the stipulation entered into by the parties, the dutiable values of the merchandise are $2.517 per case for that imported in 5 ounce tins, and $3.598 per case for that imported in 8 ounce tins; and that the appellate division of the United States Customs Court erred in affirming the judgment of the trial court.

Accordingly, the judgment is reversed and the cause remanded for proceedings consistent with the views herein expressed.

Reversed and remanded.

LENROOT, Associate Judge (dissenting).

I am unable to concur in the conclusion reached by the majority herein.

Of course the involved proclamation of the President is presumptively valid.

The majority opinion does not hold that there were not facts before the commission upon which costs of production could be ascertained. The evidence before the commission is not before us, and the conclusion of the majority is based wholly upon the report of the commission to the President.

The majority holds that, although the commission investigated prices or values of the foreign article for a representative period, the conversion of these prices from yen into dollars at the average rate of exchange for the year 1932 for the entire representative period was erroneous, that such error rendered the investigation made by the commission illegal, and that the proclamation of the President, having been based upon an illegal investigation, was without authority of law and void.

For the purpose of this dissent I will assume that the commission erred in its conversion of Japanese yen into dollars, at the average rate of exchange for 1932, applied to invoices of 1931. I contend, however, that this error did not render the investigation illegal, nor should it be assumed that the President made the same error in approving the rate recommended by the Tariff Commission. It is my judgment that if there was any substantial evidence before the commission to sustain the proclamation

of the President, it was valid notwithstanding any error made by the commission in drawing its conclusions from the facts secured by it in its investigation. David L. Moss Co., Inc. v. United States, 103 F.2d 395, 26 C.C.P.A., Customs, ——. Inasmuch as the evidence produced before the commission is not before us, we must presume that there was such substantial evidence unless from the facts reported by the commission we may not indulge the legal presumption that there was substantial evidence before the commission sustaining the action of the President. Carl Zeiss, Inc. v. United States, 76 F.2d 412, 23 C.C.P.A., Customs, 7, T.D. 47654.

I find nothing in the record in the case at bar to indicate that the commission might not have come to the same conclusion as to the rates recommended if it had not erred in its application of the rate of exchange to the invoices of 1931. There is nothing in the report of the commission or in the record indicating that it did not also have before it invoice prices of imports from Japan, in terms of yen, for the year 1933 and immediately preceding the date of its report, which was April 5, 1934. If the average prices shown by such invoices were in yen approximately the same as the prices in 1931 and 1932, and if the commission had converted the yen prices on invoices of 1931 upon the rate of exchange prevailing in 1931, we think it would have been fully justified in holding that the difference in the rate of exchange prevailing in 1931 and 1932 and that prevailing in 1933 and 1934 was a relevant factor in determining the differences in costs of production at the date of its report, which, after all, was the ultimate objective of the investigation, and that, in order to recommend to the President a rate which would equalize the differences in such cost of production, the depreciation in the value of the yen, measured in U. S. dollars, should be taken into consideration. This being true, the President could have legally approved the rate recommended by the Tariff Commission. Furthermore, I call attention to the fact that the commission in its report stated that the recommended rate is less than the excess of domestic over foreign costs. The reason that no higher rate was recommended was that the statute, section 336, did not permit it. The situation, therefore, was that the President could have found upon the facts before the commission a less difference between the cost of production of domestic and foreign articles than

that found by the commission, and yet have approved the rate recommended by it.

I contend that any conclusion arrived at by the commission from the facts secured in its investigation is not a part of the investigation and may lawfully be ignored by the President. Section 336 (c) provides that the President shall by proclamation approve the rates recommended by the commission "if *in his judgment* such rates of duty and changes are shown *by such investigation of the commission* to be necessary to equalize such differences in cost of production." (Italics supplied.)

Surely it cannot be said, in view of the above quoted language, that the conclusions of the commission are a part of the investigation in the sense that an error of law by the commission in arriving at its conclusions renders the investigation illegal.

Furthermore section 336 (a) distinguishes between the "results of the investigation" and the investigation itself, clearly indicating that the findings of the commission from the facts adduced before it are not strictly a part of the investigation itself.

The predecessor of section 336 was section 315 of the Tariff Act of 1922, 42 Stat. 941. One of the principal differences between the two sections is that in section 315 the President, in arriving at his determination, was not confined to a consideration of the facts secured by the commission, while under section 336 he is so limited.

However, so far as the question before us is concerned, I consider certain of our decisions under the Tariff Act of 1922 applicable here.

In the case of William A. Foster & Co., Inc., et al. v. United States, 20 C.C.P.A., Customs, 15, T.D. 45673, we said: "In determining this matter, it will be borne in mind that we are here concerned with the legality of the President's act in raising the rates on case polished plate glass, unsilvered, from the statutory figure to that fixed by his proclamation. The question is not whether the United States Tariff Commission committed error, or whether the testimony heard by, or the findings of, the commission were sufficient to legally justify the President's finding and proclaimed rates. The President is not bound by such testimony or findings. He may arrive at his conclusions from information derived from other sources, which information may be privately conveyed and confidentially received. The various elements which he

must take into consideration, as fixed by said section 315 (c), give him wide latitude. Therefore, it is fallacious to argue that possible error committed by the Tariff Commission, or failure of proof before that body, may invalidate the President's finding and proclamation. Such hearing before the United States Tariff Commission is provided by law 'to assist the President,' not to control him."

Except for the fact that under the Tariff Act of 1930 the President is bound by the testimony adduced before the commission, while under the act of 1922 he was not, the language last above quoted is clearly applicable to the case at bar. Here, as there, the President is not bound by the findings of the commission, and here, as there, it is fallacious to argue that error committed by the Tariff Commission in its findings may "invalidate the President's finding and proclamation."

In the case of Akawo & Co. et al. v. United States, .77 F.2d 660, 664, 23 C.C.P. A., Customs, 75, T.D. 47737, we said: "* * * The mere fact that the Tariff Commission may have committed error, although we find no evidence of it, so long as its investigation was a legal one, is not of vital consequence so far as the provisions of section 315, supra, are concerned. * * *"

The case of Feltex Corp. v. Dutchess Hat Works, 71 F.2d 322, 330, 21 C.C.P.A., Customs, 463, T.D. 46957, arose under the Tariff Act of 1930 and section 336 was there, as it is here, involved. In that case we said:

"By section 336 (c) the President is not in any way bound by the 'results' or 'findings' reported by the Tariff Commission. He is required to approve the rates specified by it if, in his judgment, such rates are 'shown by such investigation' to be necessary to equalize such differences in costs of production. In forming his judgment, as aforesaid, he is not limited to an examination of the report of the Commission. There is nothing in the statute which expressly or impliedly so requires. One of the principal distinctions between section 336 of the Tariff Act of 1930 * * * and section 315 * * * of the Tariff Act of 1922 * * * is that under said section 315 the President could make any investigation that he saw fit, and might specify any increases or decreases in rates that in his judgment were necessary to equalize costs of production, subject to the

limitation that such increases or decreases must not exceed 50 per centum of the rates specified under subtitle 1 of the Tariff Act of 1922. Before he could so act however, the Tariff Commission must have made an investigation of the differences in costs of production of the merchandise the subject-matter of the President's proclamation.

"Under the provisions of section 336 of the Tariff Act of 1930 * * * the President, in forming his judgment, is confined to a consideration of the facts secured by the Tariff Commission in its investigation, and is further limited to approval of the rates specified by the Commission if he finds, from such investigation, that the rates so specified are necessary to equalize costs of production.

"We can find nothing in the statute which limits the President to a consideration of the report of the Tariff Commission, but we think the fair construction of section 336 is that the President, upon a report coming to him from the Tariff Commission, may require such Commission to place before him all the facts secured by it in its investigation, and from such facts the President may determine whether the rates specified in the report of the Commission should be approved.

"If the Commission should, in a given case, report only its conclusions, it is clear that the President, if he is confined to the report of the commission in arriving at his judgment, would have no facts whatever upon which to base his judgment, but only conclusions of the Commission. It is our opinion that it was the intention of Congress that the President should consider all the relevant facts before the Commission in its investigation in arriving at his judgment, and that, in arriving at such judgment, he is not confined to a consideration of the report of the Commission other than that he must approve or disapprove the rates specified by the Commission in its report.

*        *        *.        *        *        *        *

"We think it immaterial, so far as the question of the validity of said proclamation is concerned, what report the Commission may have made as to the results of its investigation or what findings it may have made, other than its finding that the rates specified by it were necessary to equalize the differences in costs of production of the merchandise under investigation. If the President, upon an examination of all the facts before the Commission, had any legal

basis for a finding that such rates were necessary to equalize costs of production, his proclamation is valid."

In my judgment the majority opinion clearly overrules so much of our opinion in the Feltex case as is above quoted.

In the case of Carl Zeiss, Inc. v. United States, supra, which also arose under section 336 of the Tariff Act of 1930, we stated [76 F.2d 416]: "The President, although not required by the provisions of section 336, supra, to accept the results or findings reported by the Tariff Commission, is required to limit his consideration of the case to the evidence presented to that body, and to approve the rates of duty and changes in basis of value specified by it, 'if in his judgment such rates of duty and changes [and changes in basis of value] are shown by such investigation * * * to be necessary to equalize such differences in costs of production.' Feltex Corp. v. Dutchess Hat Works, 71 F.2d 322, 323, 21 C.C.P.A., Customs, 463, T.D. 46956."

Under the majority opinion every error of the Tariff Commission arising from failure by it to comply with the mandate of section 336 in making its findings renders the entire investigation illegal, and the ensuing proclamation of the President, approving the rates specified, void. To illustrate how far reaching this ruling is, I call attention to other provisions of section 336 where such ruling may be applied. Under subdivision (e) (2) of said section the commission is required, in so far as it finds it practicable, in ascertaining the differences in cost of production, to consider transportation costs. If it should appear from the report of the commission that there were transportation costs and that the commission in making its findings had failed to consider them, the entire investigation would be illegal and the proclamation of the President would be void, even though the proclamation should recite that the President had, in arriving at his determination, taken into consideration such costs.

Under section 336 (h) (4) it is provided that the cost of production shall include the cost of containers of the merchandise; but under the majority opinion, if it appeared from the report of the commission that it had not considered the cost of containers, the entire investigation would be illegal, and the President's proclamation would be void, even though the proclamation should recite that the evidence before the commission established the cost of the containers and that the President had considered such cost in approving the rates recommended by the commission.

Other illustrations might be given where, under the view of the majority, an entire investigation would be rendered illegal through some error in the findings of the commission, which findings, we have repeatedly said, are not binding upon the President.

In conclusion, it is my view that if an investigation is held, with due notice and opportunity to be heard, and if there is substantial evidence produced before the commission to sustain the proclamation of the President, and the President in making his determination has complied with the mandate of the statute, such proclamation is valid, notwithstanding any errors made by the commission in its findings.

There being nothing in the record before us indicating that there was no substantial evidence before the commission sustaining the proclamation of the President, and the evidence before the commission not being before us, the presumption of the validity of the President's proclamation has not been overcome, and the judgment appealed from should be affirmed.

JACKSON, Associate Judge (dissenting).

There is nothing expressly contained in section 336 of the Tariff Act of 1930 which would render it mandatory to convert foreign currency as held by the majority. While it is quite true that provision is made therein for the establishment of cost of production of a foreign article by taking the weighted average of the invoice prices for a representative period, it does not necessarily follow that in converting the said cost from foreign currency into dollars, any particular exchange rate for the same period be used, excluding of course arbitrary and capricious action. Moreover, the said statute states that the commission may consider "other relevant factors that constitute an advantage or disadvantage in competition." The fluctuating value of the yen during the representative period fixed by the commission in my opinion is certainly a relevant factor affecting competition and was properly considered by the commission and such consideration is within its statutory authority.

The investigation for finding the difference in cost of production between a domestic and a like or similar foreign article

has for its purpose the equalization of said costs, and a situation may arise in an investigation where the cost of production of the foreign article based upon the weighted average of the invoice prices "is not representative of the present or future invoice values in terms of dollars" as was found by the commission here. This is a finding of fact. The change in rate of duty, classification or basis of value which may be found to be necessary is not for the present nor for the representative period. It is for the future protection of domestic industry.

The only express statutory authority which appellant contends supports its view is section 522(b) of the said Tariff Act, 31 U.S.C.A. § 372(b). It reads as follows:

"Sec. 522. [§ 372]. Conversion of currency.

\* \* \* \* \* \* \*

"(b) Proclaimed Value Basis of Conversion.—For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this Act [June 17, 1930], wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of section 25 of such Act of August 27, 1894, as amended [paragraph (a) of this section], for the quarter in which the merchandise was exported."

In my opinion, section 522(b), supra, has no application to the issue presented. By its very language it applies only for the purpose of the assessment and collection of duties. The Tariff Commission possesses no right or duty in respect to the assessment and collection of duties upon imported merchandise. Its function is to investigate, make findings and report such findings to the President. It is an exclusive agency of Congress and is limited by statute to the narrow purpose of collecting facts so that costs of production may be equalized as far as tariff duty is concerned in this country and abroad.

Had Congress intended that the Tariff Commission should be bound in converting foreign currency into American dollars as held by the majority, I think it surely would have so stated in either of sections 336 or 522(b), supra.

In my opinion the commission acted entirely within the scope of its statutory authority. However, if I am in error as to this, the conclusion reached by the majority in my opinion is correct.